UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **SPS LIMITED PARTNERSHIP, LLLP AND SPS 35, LLC,** <br> 600 Shipyard Road <br> Baltimore, Maryland 21202 <br> (Baltimore County, Maryland) <br><br>       Plaintiffs, <br><br> v. <br><br> **SEVERSTAL SPARROWS POINT, LLC a/k/a SEVERSTAL NORTH AMERICA** <br> 1209 Orange Street <br> Wilmington, DE 19801 <br><br>   SERVE ON RESIDENT AGENT: <br>   The Corporation Trust Incorporated <br>   351 West Camden Street <br>   Baltimore, MD 21201 <br><br> **ARCELORMITTAL USA, INC.,** <br> One South Dearborn Street <br> 19th Floor <br> Chicago, IL 60603-2302 <br><br>   SERVE ON RESIDENT AGENT: <br>   The Corporation Trust Company <br>   Corporation Trust Center <br>   1209 Orange Street <br>   Wilmington, DE 19801 <br><br>       Defendants. | Civil Action No.: _____ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

SPS Limited Partnership, LLLP and SPS 35, LLC ("Plaintiffs"), by and through their counsel, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, file this Complaint and allege as follows:

I.     **PRELIMINARY STATEMENT**

1.     Plaintiffs bring this Complaint to recover cleanup and other response costs incurred by Plaintiffs or their affiliates, to obtain contribution from the above-named Defendants, to obtain declaratory relief as to liability for future response costs pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9607(a); to require Defendants to take all actions necessary to eliminate the imminent and substantial endangerment to health and the environment pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. ("RCRA"); and to recover damages pursuant to Maryland common law.

2.     The subject matter of this action is the Sparrows Point Shipyard located in Sparrows Point, Baltimore County, Maryland (the "Shipyard Site"). The Shipyard Site, which has an address of 600 Shipyard Road, Sparrows Point, Baltimore County, Maryland, is identified as "PARCEL SY AREA = 226.3575 ACRES" on the plan of survey prepared by Whitman, Requardt and Associates entitled "Subdivision Plat of Part of the Property of Bethlehem Steel Corporation" dated May 28, 1997, and recorded among the Land Records of Baltimore County, Maryland in Liber 69, Folio 87.

3.     The Shipyard Site is adjacent to and surrounded on three sides by certain real property consisting of approximately 3500 acres located on or adjacent to North Point Boulevard, Sparrows Point, Baltimore County, Maryland, upon which a steel mill has operated for over 100 years (the "Steel Mill Site").

4.     Defendants are present and former owners and operators of the steel manufacturing and related facilities located on the Steel Mill Site where the violations that are the subject of this Complaint took place and continue to take place. Defendants are successor owners and operators to Bethlehem Steel Corporation ("BSC"), the original owner and operator of the Steel Mill Site.

2

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction based upon CERCLA, 42 U.S.C. §§ 9607 and 9613; RCRA, 42 U.S.C. § 6972; the existence of a federal question, 28 U.S.C. § 1331; and there being diversity of citizenship among the parties and the amount in controversy exceeding $75,000.00, 28 U.S.C. § 1332.  This Court has supplemental jurisdiction over the state claims based on 28 U.S.C. § 1367, said claims being so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Additionally, this Court has authority to issue a declaratory judgment concerning the rights and liabilities of the parties pursuant to 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. § 9613(g)(2).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1395, 42 U.S.C. §§ 9607(a), and 42 U.S.C. § 6972(a)(1)(B) because the releases or threatened releases of hazardous substances, the acts and omissions of Defendants, and the damages incurred and to be incurred by Plaintiffs giving rise to the claims in this action occurred in this district, because the Shipyard Site is located in this district, and because the alleged endangerment occurred and is occurring in this district.

8. On or about September 5, 2008, Plaintiffs and Defendants entered into a Tolling Agreement which tolled and suspended any limitations periods set forth in any applicable statute of limitations or statutes or periods of repose applicable to any claims Plaintiffs possessed against Defendants as of August 28, 2008.

9. On May 11, 2010, after negotiations to resolve this dispute out of court proved unsuccessful, Plaintiffs provided written notice of their intent to bring this action, as required by section 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), and section 310(d)(1) of CERCLA, 42 U.S.C. §

9659(d)(1). More than 90 days have passed since the notices were given and neither the United State Environmental Protection Agency ("USEPA") nor the Maryland Department of Environment ("MDE") has commenced or is diligently prosecuting a civil or criminal action to redress the violations. In addition, USEPA has not taken any of the actions described in section 7002(b)(2)(B)(i)-(iv) of RCRA, 42 U.S.C. § 6972(b)(2)(B)(i)-(iv), and MDE has not taken any of the actions described in section 7002(b)(2)(C)(i)-(iii) of RCRA, 42 U.S.C.§ 6972(b)(2)(C)(i)-(iii).

### III.   PARTIES

10.   Plaintiff SPS Limited Partnership, LLLP ("SPS LLLP"), is a Maryland limited liability limited partnership with its principal place of business located at 600 Shipyard Road, Baltimore, Maryland in Baltimore County 21219.

11.   Plaintiff SPS 35, LLC ("SPS 35"), is a Maryland limited liability company with its principal place of business located at 600 Shipyard Road, Baltimore, Maryland in Baltimore County 21219.

12.   Defendant Severstal Sparrows Point, LLC (f/k/a ISG Sparrows Point, LLC) (hereinafter, "Severstal LLC") is a Delaware limited liability company with a principal place of business at 1209 Orange Street, Wilmington, Delaware 19801. Severstal LLC is the current owner and operator of the Steel Mill Site, which was for many years owned and operated by BSC. Severstal LLC acquired the Steel Mill Site from Defendant ArcelorMittal USA, Inc. on or about May 7, 2008. In doing so, Severstal LLC became responsible for complying with all environmental laws pertaining to the operation and ownership of the Steel Mill Site, including current and past pollution emanating from the Steel Mill Site.

13.   Defendant ArcelorMittal USA, Inc. ("ArcelorMittal") is a Delaware corporation with its principal place of business at One South Dearborn Street, 19th Floor, Chicago, Illinois 60603.

ArcelorMittal acquired the Steel Mill Site when it merged with Mittal Steel USA, Inc. ("Mittal Steel") on or about June 26, 2006. In doing so, ArcelorMittal became responsible for complying with all environmental laws pertaining to the operation and ownership of the Steel Mill Site, including current and past pollution emanating from the Steel Mill Site.

14. Mittal Steel acquired the Steel Mill Site when it merged with or acquired International Steel Group ("ISG") on or about April 5, 2005. In doing so, Mittal Steel became responsible for complying with all environmental laws pertaining to the operation and ownership of the Steel Mill Site, including current and past pollution emanating from the Steel Mill Site. On information and belief, Mittal Steel is no longer a viable entity.

15. ISG Sparrows Point, LLC ("ISG") acquired the Steel Mill Site from BSC on or about April 30, 2003. ISG is now known as Severstal Sparrows Point LLC.

## IV. FACTUAL BACKGROUND

16. SPS LLLP is the current majority owner of the Shipyard Site. SPS LLLP acquired title to the Shipyard Site on or about March 4, 2004 from Baltimore Marine Industries, Inc. SPS 35, LLC acquired a minority ownership interest in the Shipyard Site on or about June 8, 2006.

17. The Shipyard Site was developed as a shipyard in approximately 1880. The Shipyard Site is comprised of approximately 131.5 acres of dry land; a 13.4 acre excavated shore dry dock for ship maintenance, repair and construction (the "Graving Dock"); and Operations at the Shipyard Site have included the repair, modification, dismantling and construction of ships. Activities in support of those operations have included metal machining, metal fabrication, grit blasting, painting, electrical repair, heat treatment of sheet metal and ship breaking. The Graving Dock, which was constructed in approximately 1969, is flooded in order to bring ships into the dock, and then can be pumped dry to

5

facilitate repair, maintenance or construction work on ships.

18.Based on information and belief, operations at the Steel Mill Site have included, among other things, a rod mill, hot strip mills, a cold sheet mill, rolling plate mill, tin mill, pipe mill, coke ovens and by-products recovery systems.

19.On or about February 25, 1997, the United States filed a complaint against BSC, the former owner and operator of the Steel Mill Site, alleging that BSC was operating without permits required under RCRA. On or about February 25, 1997, the State of Maryland also filed a complaint against BSC, pursuant to its authority under state environmental laws, seeking relief from alleged endangerment to human health and the environment from contamination at and around the Steel Mill Site. Both the USEPA and the MDE have determined that operations at the Steel Mill Site have caused a release of hazardous wastes, hazardous substances and/or hazardous constituents into the environment at and/or from the Steel Mill Site.

20.On October 8, 1997, BCS entered into a consent decree (the "Consent Decree") with the USEPA and the MDE pursuant to RCRA (USEPA File/Site Number MDD053945432). Pursuant to the Consent Decree, BSC agreed to investigate and address certain environmental conditions at the Steel Mill Site and the Shipyard Site. Effective April 30, 2003, the Consent Decree was modified to replace BSC with ISG as the party responsible for complying with the Consent Decree.

21.On or about June 15, 2006, the Shipyard Site was removed from the Consent Decree pursuant to the approval and direction of the USEPA.

22.Based on information and belief, in or about 2008, Severstal LLC assumed from ArcelorMittal and its predecessors, including ISG, all responsibility for performance of the obligations under the Consent Decree.

23. Based on information and belief, operations at the Steel Mill Site have resulted in releases of hazardous substances at the Steel Mill Site, including benzene, which releases have caused and are causing contamination of soil and/or groundwater at the Steel Mill Site. Contamination in the soil and groundwater at the Steel Mill Site has migrated and is migrating to the Shipyard Site.

24. Based on information and belief, operation of the coke ovens and facilities associated with the coke ovens (including, without limitation, the structure known as the "litol/benzene plant") at the Steel Mill Site has resulted in releases of hazardous substances (including, without limitation, benzene, naphthalene, toluene, ethylbenzene, xylenes, other organic substances, and arsenic, lead and other metals) to the soil and groundwater at the Steel Mill Site, which hazardous substances have migrated, and are migrating, to the Shipyard Site.

25. Based on environmental investigations performed on behalf of ISG at the Steel Mill Site, the area of the coke oven operations is one of five RCRA highly-contaminated areas (identified in the investigations as "Special Study Areas" by EPA) at the Steel Mill Site.

26. According to ISG's environmental investigations, the area of the coke oven operations is the "source area" of contamination, including without limitation, benzene, naphthalene, toluene, ethylbenzene, xylenes, other organic substances, and arsenic, lead and other metals.

27. According to ISG's environmental investigations at the Steel Mill Site, concentrations of benzene in the groundwater beneath the area of the coke ovens are as high as 1,100,000 micrograms per liter.

28. Water and sediment samples collected by the Maryland Port Administration in 2009 confirm that the hydrocarbon plume created by the Steel Mill Site has migrated into the Patapsco River.

29. Based on information and belief, none of the Defendants, USEPA nor MDE has taken

sufficient action to control, mitigate, prevent, abate, remediate or remove the groundwater and soil contamination associated with the area of the coke oven operations.

30. Plaintiffs have investigated and are continuing to investigate environmental conditions at the Shipyard Site (including the nature, scope and cause(s) of groundwater contamination at the Shipyard Site) pursuant to requirements of the State of Maryland. To date, Plaintiffs have incurred in excess of $700,000 to investigate environmental conditions at the Shipyard Site.

31. When Plaintiffs acquired the Shipyard Site, they inherited an NPDES permit that had been in draft form for a number of years. The NPDES permit included a benzene limit associated with the dewatering/trim pumps at the Graving Dock (i.e., pumps that pump out the water that is in the Graving Dock, which comes from the Patapsco River when the gate is open for a vessel to enter or exit the Graving Dock).

32. In 2007, MDE realized that the benzene requirement in the NPDES permit should have been associated with the underdrain pumps, rather than the dewatering/trim pumps, and asked Plaintiffs to sample for benzene at the underdrain pumps.

33. During 2008, Plaintiffs and MDE discussed revision of the NPDES permit and the need for Plaintiffs to have time to install a treatment system for the benzene.

34. In January 2009, Plaintiffs and MDE finalized a revised NPDES permit with a new benzene requirement at the underdrain pumps to become effective on February 1, 2010.

35. Plaintiffs have had to install a wastewater treatment system designed to remove benzene at the Graving Dock in order to comply with the NPDES permit.

36. To date, the cost of installing and operating the wastewater treatment system has amounted to more than $700,000 and is expected to cost an additional $20,000 per month in operating

and maintenance costs.

## COUNT ONE
## COST RECOVERY UNDER CERCLA

37.     The allegations of paragraphs 1 through 36 inclusive of this Complaint are hereby incorporated by reference as if fully set forth herein.

38.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) states:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section --
>
> (1) the owner or operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or Sites selected by such person, from which there is a release or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for --
>
> > (A) all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the National Contingency Plan;
> >
> > (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan . . .

39.     Defendants are "persons" within the meaning of section 101(21) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601(21).

40. "Hazardous substances" within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including benzene were disposed, placed or otherwise became located at the Steel Mill Site at times relevant to this action.

41. There have been "releases" within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22), or threatened releases, of hazardous substances into the environment at or from the Steel Mill Site at times relevant to this action.

42. The Steel Mill Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C.§ 9601(9).

43. Upon information and belief, Defendants are liable persons pursuant to section 107(a)(1) or 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1) or § 9607(a)(2), in that they are a present owner and/or operator of part of the Steel Mill Site, or a former owner and/or operator of the Steel Mill Site at a time when hazardous substances were disposed at the Steel Mill Site.

44. Such "disposal" constitutes a "release" or "threatened release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

45. The investigation and actions taken by Plaintiffs in connection with the Shipyard Site constitute "response" actions within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with which Plaintiffs have incurred costs not inconsistent with the National Contingency Plan ("NCP") which was promulgated under section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and is codified at 40 C.F.R. part 300, et seq.

46. Plaintiffs have incurred and will continue to incur necessary response costs pursuant to section 107(a)(4)(B) of CERCLA, 42 U.SC. § 9607(a)(4)(B) and implementing regulations.

47. Defendants are jointly and severally liable to Plaintiffs for Plaintiffs' response costs,

pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendants, jointly and severally, for all response costs incurred and to be incurred by Plaintiffs, that a declaratory judgment be entered against Defendants, jointly and severally, on liability for response costs that will be binding on any subsequent action or actions to recover further response costs, and that the Court award Plaintiffs their costs of suit, including costs of enforcement activities such as attorneys' fees, expert witness fees, interest, and such other and further relief as the Court shall deem just and proper.

## COUNT TWO
## DECLARATORY JUDGMENT

48. The allegations of paragraphs 1 through 47 inclusive of this Complaint are hereby incorporated by reference as if fully set forth herein.

49. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment holding Defendants liable for their equitable shares of all response costs incurred by Plaintiffs, in the past or future, in connection with the Shipyard Site.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants (a) ordering Defendants to reimburse Plaintiffs for their equitable share, as determined by the Court, of response costs under 42 U.S.C. § 9607(a) which Plaintiffs have incurred or may incur in the future in connection with the Shipyard Site; (b) ordering a declaratory judgment that Defendants shall be liable under 42 U.S.C. § 9607(a) for their equitable share of response costs, as determined by the Court, which Plaintiffs have incurred or may incur in the future in connection with the Shipyard Site; awarding Plaintiffs their costs and attorneys' fees and all other relief that the Court deems appropriate.

**COUNT THREE**
**RESOURCE CONSERVATION AND RECOVERY ACT**
**42 U.S.C. § 6972(a)(1)(B)**

50. The allegations of paragraphs 1 through 49 inclusive of this Complaint are hereby incorporated by reference as if fully set forth herein.

51. The Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B), entitles private citizens to maintain an action against any person or corporation alleged to have contributed to or contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste that may present an imminent and substantial endangerment to health or the environment.

52. On May 11, 2010, Plaintiffs gave notice of violations and their intent to file suit to the Administrator of the USEPA, the Regional Administrator of USEPA Region 3, the MDE, the U.S. Attorney General, the Maryland Attorney General, and Defendants and their predecessors, as required by section 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), section 310(d)(1) of CERCLA, 42 U.S.C. § 9659(d)(1).

53. More than 90 days have passed since the notices were given and neither USEPA nor MDE has commenced or is diligently prosecuting a civil or criminal action to redress the violations. In addition, USEPA has not taken any of the actions described in section 7002(b)(2)(B)(i)-(iv) of RCRA, 42 U.S.C. § 6972(b)(2)(B)(i)-(iv), and MDE has not taken any of the actions described in section 7002(b)(2)(C)(i)-(iii) of RCRA, 42 U.S.C.§ 6972(b)(2)(C)(i)-(iii).

54. Plaintiffs have complied with all notice requirements of 42 U.S.C. § 6972.

55. Defendants are "persons" within the meaning of section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

56. Benzene and other wastes associated with the operations at the coke oven area at the Steel Mill Site are solid or hazardous wastes under section 1004(5) and/or (27) of RCRA, 42 U.S.C. § 6903(5) & (27).

57. Defendants have contributed and/or are contributing to the past and present stage handling, treatment, and/or disposal of a solid or hazardous wastes which presents an imminent and substantial endangerment to health or the environment within the meaning of section 7002(a)(1)(B) of RCRA, 42 U.S.C.§ 6972(a)(1)(B).

WHEREFORE, Plaintiffs respectfully request that the Court

(1) Declare that there exists or may exist an imminent and substantial endangerment to health and the environment caused by the Defendants' past and/or present handling, treatment, and/or disposal of solid or hazardous waste with respect to the Steel Mill Site

(2) Order Defendants to take all such actions as may be necessary to eliminate any such endangerment, including:

    (a) fund a comprehensive study to determine the nature and extent of the endangerment;

    (b) fund a comprehensive study of appropriate, effective, environmentally-sound means to eliminate the endangerment; and

    (c) develop and implement an appropriate and effective remedial plan.

(3) Award Plaintiffs their costs (including reasonable attorneys' and expert witness fees) as authorized by section 7002(e) of RCRA, 42 U.S.C. § 6972(e), section 310(f) of CERCLA, 42 U.S.C. § 9659(f); and

(4) such other relief as the Court deems just and proper.

## COUNT FOUR
## NEGLIGENCE

58. The allegations of paragraphs 1 through 57 inclusive of this Complaint are hereby incorporated by reference as if fully set forth herein.

59. Pursuant to State and Federal statutory and State common law, Defendants owe and owed Plaintiffs a duty of care in the generation, handling, disposal and containment of hazardous substances generated as a result of operations at the Steel Mill Site, including previous operation of the coke ovens and the facilities associated with the coke ovens.

60. Defendants, as current or former owners of the Steel Mill Site and/or as owner and/or operator of the steel mill, owed and continue to owe a duty of care to Plaintiffs and Plaintiffs' predecessor in title to ensure that reasonable measures would be taken to safely handle, store and dispose of the hazardous by-products of those processes, to prevent the migration and continuing migration of contaminants from the Steel Mill Site onto and into the Shipyard Site, and to remedy the problems they caused.

61. Defendants knew or should have known that operation of the coke ovens and associated facilities resulted in the disposal of hazardous substances at the Steel Mill Site, and that such disposal caused and is causing releases to the environment that present a serious risk of injury to persons or property, including Plaintiffs and the Shipyard Site.

62. Defendants knew or should have known that hazardous substances present in the subsurface at the Steel Mill Site had migrated and were continuing to migrate onto and into adjoining properties, including the Shipyard Site.

63. Defendants breached the duty of care owed to Plaintiffs and others by failing to act properly and reasonably to contain hazardous substances at the Steel Mill Site, to prevent the discharge

14

of hazardous substances from the Steel Mill Site onto the Shipyard Site, and to promptly and appropriately remedy the problems they caused, including preventing the migration of contaminants onto and into the Property.

64. Defendants' negligent acts also include, without limitation, the following:

   a. improperly maintaining the Steel Mill Site;

   b. failing to monitor, test and maintain systems for the detection of hazardous substances in the subsurface at the Steel Mill Site;

   c. failing to safely handle, store and dispose of hazardous substances at the Steel Mill Site;

   d. failing to notify promptly Plaintiffs and/or appropriate governmental authorities of the release(s) of benzene and other hazardous substances at the Steel Mill Site;

   e. failing to determine promptly the scope of the release(s) of hazardous substances at the Steel Mill Site, including without limitation, the lateral extent and depth of contamination in the area of the coke oven operations;

   f. failing to delineate fully the extent and nature of known groundwater contamination plumes originating at the Steel Mill Site (including without limitation, the groundwater contaminant plume emanating from the area of the coke oven operations) as required by Maryland statutes and regulations;

   g. failing to control the movement of hazardous substances from the Steel Mill Site into the environment and/or to areas outside of the Steel Mill Site;

   h. failing to contain hazardous substances present in the subsurface at the Steel Mill Site to the boundaries of the Steel Mill Site;

       i.      failing to address and remediate timely and adequately release(s) of hazardous substances at the Steel Mill Site, including preventing migration to other properties, including the Shipyard Site; and

       j.      committing any and all of the foregoing acts and omissions and thereby subjecting Plaintiff and others to a substantially increased risk of harm.

65. As a direct and proximate result of Defendants' conduct, Defendants have caused Plaintiffs to suffer and to continue to suffer financial and economic loss and loss of the use and enjoyment of the Property, as well as other damages. In light of the risks and dangers that were known or should have been known by Defendants to exist at the time, Defendants' conduct in allowing releases of benzene and other hazardous substances and, after the discovery of such contamination, failing to promptly and adequately investigate, remediate, and notify Plaintiffs and/or appropriate governmental authorities of the contamination, was without legal justification or excuse.

WHEREFORE, Plaintiffs pray that the Court enter judgment against Defendants and award Plaintiffs compensatory damages in an amount to be determined at trial, together with such other and further relief as the Court deems appropriate.

## COUNT FIVE
## TRESPASS

66. The allegations of paragraphs 1 through 65 inclusive of this Complaint are hereby incorporated by reference as if fully set forth herein.

67. Defendants have allowed benzene and other hazardous substances to migrate from the Steel Mill Site to the Shipyard Site.

68. Defendants' unreasonable failure to contain benzene and other hazardous substances within the confines of the Steel Mill Site substantially and unreasonably interferes with Plaintiffs'

reasonable use and enjoyment of the Shipyard Site.

69. The physical entry of the aforesaid substances onto the Shipyard Site interferes with Plaintiffs' possession, use and enjoyment of the Shipyard Site, is unlawful and without Plaintiffs' consent.

70. As a result of the migration of benzene and other hazardous substances from the Steel Mill Site onto Plaintiffs' property, the value of the Shipyard Site has been diminished in an amount to be determined at trial and Plaintiffs incurred and will continue to incur costs remediating and decontaminating the Shipyard Site in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against the Defendants for all costs incurred by Plaintiffs in remediating and decontaminating the Shipyard Site, together with the diminution in value of the Shipyard Site arising as a result of the contamination in an amount to be determined at trial, and such other and further relief as the Court deems appropriate.

## COUNT SIX
## NUISANCE

71. The allegations of paragraphs 1 through 70 inclusive of this Complaint are hereby incorporated by reference as if fully set forth herein

72. Defendants' unreasonable failure to contain benzene and other hazardous substances within the confines of the Steel Mill Site substantially and unreasonably interferes with Plaintiffs' reasonable use and enjoyment of the Shipyard Site.

73. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered injury insofar as they have been required to incur substantial expense remediating and decontaminating the Shipyard Site, loss of the use and enjoyment of the Shipyard Site and other damages.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendants for (a) all costs incurred and to be incurred by Plaintiffs in remediating and decontaminating the Shipyard Site, and (b) the diminution in value of the Shipyard Site arising as a result of the contamination in an amount to be determined at trial; and that Defendants be required to abate the migration of benzene and other hazardous substances from the Steel Mill Site to the Shipyard Site; and such other and further relief as the Court deems appropriate.

### COUNT SEVEN
### STRICT LIABILITY

74. The allegations of paragraphs 1 through 78 inclusive of this Complaint are hereby incorporated by reference as if fully set forth herein

75. Defendants' storage of hazardous materials underground at the Steel Mill Site without containment constitutes an abnormally dangerous activity, with a high risk of harm to Plaintiffs and the Shipyard Site.

76. The risk of harm resulting from the failure to remediate and/or contain benzene and other hazardous materials is substantial.

77. Given the topography, the proximity of the coke ovens and associated operations to subsurface aquifers, and the close proximity of the Steel Mill Site to the Patapsco River, Defendants' subsurface, uncontained, and nonpermitted storage of hazardous substances at the Steel Mill Site is inappropriate for its locale.

78. Subsurface, uncontained and nonpermitted storage of hazardous substances is not a matter of common usage and the value of such activity was and is outweighed by the substance's dangerous propensity.

79. Defendants had the right to control and did control the operations on the Steel Mill Site.

80. As a result of the subsurface and uncontained storage of hazardous materials on the Steel Mill Site, the Shipyard Site was contaminated with benzene and other hazardous substances.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendants for all costs incurred by Plaintiffs in remediating and decontaminating the Shipyard Site, together with the diminution in value of the Shipyard Site arising as a result of the contamination in an amount to be determined at trial, and such other and further relief as the Court deems appropriate.

Respectfully submitted,

    /s/ Margaret M. Witherup
Catherine A. Bledsoe (Bar No. 11376)
Margaret M. Witherup (Bar No. 23730)
Gordon, Feinblatt, Rothman,
Hoffberger & Hollander, LLC
233 East Redwood Street
Baltimore, MD 21202
410-576-4145 (phone)
410-576-4269 (fax)
cbledsoe@gfrlaw.com
mwitherup@gfrlaw.com

Attorneys for Plaintiffs

## **DEMAND FOR JURY**

Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

                                      Respectfully submitted,

                                      __*/s/ Margaret M. Witherup*_____
                                      Catherine A. Bledsoe (Bar No. 11376)
                                      Margaret M. Witherup (Bar No. 23730)
                                      Gordon, Feinblatt, Rothman,
                                      Hoffberger & Hollander, LLC
                                      233 East Redwood Street
                                      Baltimore, MD 21202
                                      410-576-4145 (phone)
                                      410-576-4269 (fax)
                                      cbledsoe@gfrlaw.com
                                      mwitherup@gfrlaw.com

                                      Attorneys for Plaintiffs

1195886v5