**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | | |
|---|---|---|
| **SPS LIMITED PARTNERSHIP, LLLP,**<br>**et al.,** | ) ) ) | |
| | ) | **Case No. 1:10-cv-02579** |
| **Plaintiffs,** | ) ) | |
| | ) | **Judge J. Frederick Motz** |
| **v.** | ) ) | |
| **SEVERSTAL SPARROWS POINT, LLC,**<br>**et al.,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

**ANSWER AND COUNTERCLAIMS OF**
**DEFENDANT ARCELORMITTAL USA LLC**

For its Answer to Plaintiffs' Complaint, Defendant ArcelorMittal USA LLC ("ArcelorMittal") hereby responds as follows:

I.      PRELIMINARY STATEMENT

1.      To the extent Paragraph 1 describes the nature of Plaintiffs' claims in this action, no response is required, but ArcelorMittal denies that Plaintiffs are entitled to any relief with respect to such claims.  ArcelorMittal denies any remaining allegations in Paragraph 1.

2.      ArcelorMittal admits that the Sparrows Point Shipyard is located in Sparrows Point, Baltimore County, Maryland.  ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2 and on that basis they are denied.

3.      ArcelorMittal admits that the Shipyard Site is adjacent to certain real property, including land on which a steel mill has operated since at least 1916.  ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in Paragraph 3 and on that basis they are denied.

4.      In response to Paragraph 4, ArcelorMittal denies that it has ever owned or operated the Steel Mill Site and denies that it has committed any violations at the Steel Mill Site. ArcelorMittal further denies that Defendants are successor owners and operators to Bethlehem Steel Corporation ("BSC").  ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4 and on that basis they are denied.

II.      JURISDICTION AND VENUE

5.      In response to Paragraph 5, ArcelorMittal admits that the Complaint purports to assert claims under federal law over which this Court would have subject matter jurisdiction, but denies that Plaintiffs are entitled to any relief against ArcelorMittal on such claims or that such statutes apply to ArcelorMittal.  By this Court's Opinion (Doc. #33) and Order (Doc. #34) dated July 5, 2011, all of Plaintiffs' state law claims in Counts IV, V, VI and VII of the Complaint have been dismissed, and therefore no answer is required to Plaintiffs' claim of supplemental jurisdiction.  ArcelorMittal denies all other allegations in Paragraph 5.

6.      Paragraph 6 is a statement of law to which no response is required.  ArcelorMittal denies that Plaintiffs are entitled to any declaratory relief against it under the statutes cited.

7.      In response to Paragraph 7, ArcelorMittal admits that venue is proper in this judicial district and that the Shipyard Site is located in this district, but denies the remaining allegations therein.

8.      In response to Paragraph 8, ArcelorMittal denies that it entered into a tolling agreement with Plaintiffs and denies the remaining allegations therein as to itself.  ArcelorMittal is without knowledge or information sufficient to form a belief as to the allegations in Paragraph

8 with regard to any other person or entity, and on that basis they are denied.

9.      In response to Paragraph 9, ArcelorMittal admits that Plaintiffs issued a written notice of intent to bring this action dated May 10, 2010, but denies that such notice was properly addressed to ArcelorMittal USA Inc. or ArcelorMittal USA LLC or otherwise sufficient. ArcelorMittal denies that it engaged in any negotiations with Plaintiffs prior to May 10, 2010. ArcelorMittal is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 9 regarding such notice with respect to any other person or entity, and on that basis they are denied.  ArcelorMittal admits that the Complaint herein was filed more than 90 days after May 10, 2010.  ArcelorMittal denies the remaining allegations in Paragraph 9.

III.    PARTIES

10.      ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and on that basis they are denied.

11.      ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and on that basis they are denied.

12.      In response to Paragraph 12, ArcelorMittal denies that Severstal Sparrows Point, LLC acquired the Steel Mill Site from ArcelorMittal on or about May 7, 2008 because ArcelorMittal has never owned the Steel Mill Site and the entity now known as RG Steel Sparrows Point, LLC has owned and operated the Steel Mill Site since 2003. ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and on that basis they are denied.

13.      In response to Paragraph 13, ArcelorMittal admits that it is a Delaware limited liability company with its principal place of business at One South Dearborn Street, 19th Floor, Chicago, Illinois, 60603.  ArcelorMittal denies the remaining allegations in Paragraph 13.

14.     ArcelorMittal denies all of the allegations in Paragraph 14.

15.     In response to Paragraph 15, ArcelorMittal admits that ISG Sparrows Point Inc., which later became ISG Sparrows Point LLC, acquired the Steel Mill Site (not including the Shipyard Site) from BSC on or about April 30, 2003.  ArcelorMittal further admits that ISG Sparrows Point LLC was later known as Severstal Sparrows Point, LLC.  ArcelorMittal denies the remaining allegations in Paragraph 15.

IV.    FACTUAL BACKGROUND

16.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and on that basis they are denied.

17.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and on that basis they are denied.

18.     In response to Paragraph 18, ArcelorMittal admits that the Steel Mill Site operations have included the production of hot-rolled sheet, cold-rolled sheet, galvanized sheet, tin plate products and other iron and steelmaking operations.  ArcelorMittal further admits that coke oven operations at the Steel Mill Site ceased by December 1991.  ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 and on that basis they are denied.

19.     In response to Paragraph 19, ArcelorMittal admits that on or about February 25, 1997, the United States and the State of Maryland filed separate complaints against BSC and that the complaints speak for themselves as to the allegations and claims alleged therein. ArcelorMittal denies the remaining allegations in Paragraph 19.

20.     In response to Paragraph 20, ArcelorMittal admits that this Court entered a Consent Decree by agreement of BSC, the United States and the State of Maryland, and that the

Consent Decree speaks for itself with respect to its requirements. ArcelorMittal denies the remaining allegations in Paragraph 20.

21.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and on that basis they are denied.

22.     In response to Paragraph 22, ArcelorMittal admits that the entity formerly known as Severstal Sparrows Point LLC became subject to certain obligations under the Consent Decree as those obligations were modified by the April 23, 2003 Bankruptcy Sale Order, but denies that this occurred in or about 2008. ArcelorMittal further denies that it or its predecessors were ever subject to the Consent Decree, and denies all remaining allegations in Paragraph 22.

23.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and on that basis they are denied.

24.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and on that basis they are denied.

25.     ArcelorMittal denies the allegations of Paragraph 25 as to itself, and denies such allegations as to any other person or entity for lack of knowledge or information sufficient to form a belief as to the truth thereof.

26.     ArcelorMittal denies the allegations of Paragraph 26 as to itself, and denies such allegations as to any other person or entity for lack of knowledge or information sufficient to form a belief as to the truth thereof.

27.     ArcelorMittal denies the allegations of Paragraph 27 as to itself, and denies such allegations as to any other person or entity for lack of knowledge or information sufficient to form a belief as to the truth thereof.

28.     ArcelorMittal is without knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 28 and on that basis they are denied.

29.     ArcelorMittal denies the allegations of Paragraph 29 as to itself and further denies that it failed to act in accordance with any obligation.  ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 as to any other person or entity and on that basis they are denied.

30.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and on that basis they are denied.

31.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and on that basis they are denied.

32.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 and on that basis they are denied.

33.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and on that basis they are denied.

34.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and on that basis they are denied.

35.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and on that basis they are denied.

36.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 and on that basis they are denied.

COUNT ONE
COST RECOVERY UNDER CERCLA

37.     In response to Paragraph 37, ArcelorMittal incorporates by reference each and every denial or other response above to the allegations in Paragraphs 1 through 36 as if fully rewritten herein.

38.     Paragraph 38 is a statement of law to which no response is required. ArcelorMittal denies that Plaintiffs are entitled to any relief against it under the statute cited.

39.     In response to Paragraph 39, ArcelorMittal denies that it is a person who may be held liable for Plaintiffs' claims under CERCLA.   ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 as to any other person or entity and on that basis they are denied.

40.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and on that basis they are denied.

41.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and on that basis they are denied.

42.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 and on that basis they are denied.

43.     ArcelorMittal denies the allegations in Paragraph 43 as to itself, and denies such allegations as to any other person or entity for lack of knowledge or information sufficient to form a belief as to the truth thereof.

44.     ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 and on that basis they are denied.

45.     ArcelorMittal denies the allegations in Paragraph 45.

46.     ArcelorMittal denies the allegations in Paragraph 46.

47.     ArcelorMittal denies the allegations in Paragraph 47 as to itself, and denies such allegations as to any other person or entity for lack of knowledge or information sufficient to form a belief as to the truth thereof.

48.     In response to the WHEREFORE paragraph following Paragraph 47,

ArcelorMittal denies that Plaintiffs are entitled to judgment or relief with respect to any of the claims asserted in the Complaint.

COUNT TWO<br>DECLARATORY JUDGMENT

49.    In response to Paragraph 48, ArcelorMittal incorporates by reference each and every denial or other response above to the allegations in Paragraphs 1 through 47 and the WHEREFORE paragraph thereafter as if fully rewritten herein.

50.    ArcelorMittal denies the allegations in Paragraph 49 as to itself, and denies such allegations as to any other person or entity for lack of knowledge or information sufficient to form a belief as to the truth thereof.

51.    In response to the WHEREFORE paragraph following Paragraph 49, ArcelorMittal denies that Plaintiffs are entitled to judgment or relief with respect to any of the claims asserted in the Complaint.

COUNT THREE<br>RESOURCE CONSERVATION AND RECOVERY ACT

52.    In response to Paragraph 50, ArcelorMittal incorporates by reference each and every denial or other response above to the allegations in Paragraphs 1 through 49 and the WHEREFORE paragraph thereafter as if fully rewritten herein.

53.    Paragraph 51 is a statement of law to which no response is required. ArcelorMittal denies that Plaintiffs are entitled to any relief against it under the statute cited.

54.    In response to Paragraph 52, ArcelorMittal admits that Plaintiffs issued a written notice of intent to bring this action dated May 10, 2010, but denies that such notice was properly addressed to ArcelorMittal USA Inc. or ArcelorMittal USA LLC.  ArcelorMittal is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 52 regarding such notice with regard to any other person or entity, and on that basis they are denied.

55.      In response to Paragraph 53, ArcelorMittal admits that the Complaint herein was filed more than 90 days after May 10, 2010.  ArcelorMittal denies the remaining allegations in Paragraph 53.

56.      ArcelorMittal denies the allegations in Paragraph 54.

57.      In response to Paragraph 55, ArcelorMittal denies that it is a person who may be held liable for Plaintiffs' claim under RCRA.  ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 as to any other person or entity and on that basis they are denied.

58.      ArcelorMittal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 and on that basis they are denied.

59.      ArcelorMittal denies the allegations in Paragraph 57 as to itself, and denies such allegations as to any other person or entity for lack of knowledge or information sufficient to form a belief as to the truth thereof.

60.      In response to the WHEREFORE paragraph following Paragraph 57, ArcelorMittal denies that Plaintiffs are entitled to judgment or relief with respect to any of the claims asserted in the Complaint.

COUNT FOUR<br>NEGLIGENCE

61.      By this Court's Opinion and Order of July 5, 2011, Plaintiffs' Count Four is dismissed.  Consequently, no response is required to Paragraphs 58 through 65 and the WHEREFORE paragraph thereafter.

COUNT FIVE<br>TRESPASS

62.      By this Court's Opinion and Order of July 5, 2011, Plaintiffs' Count Five is dismissed.  Consequently, no response is required to Paragraphs 66 through 70 and the

WHEREFORE paragraph thereafter.

## COUNT SIX
## NIUSANCE

63.     By this Court's Opinion and Order of July 5, 2011, Plaintiffs' Count Six is dismissed.   Consequently, no response is required to Paragraphs 71 through 73 and the WHEREFORE paragraph thereafter.

## COUNT SEVEN
## STRICT LIABILITY

64.     By this Court's Opinion and Order of July 5, 2011, Plaintiffs' Count Seven is dismissed.   Consequently, no response is required to Paragraphs 74 through 80 and the WHEREFORE paragraph thereafter.

65.     ArcelorMittal denies each and every allegation in the Complaint not expressly admitted herein.

## **AFFIRMATIVE DEFENSES**

### **FIRST DEFENSE**

66.     The Complaint fails to state a claim against ArcelorMittal upon which relief can be granted.

### **SECOND DEFENSE**

67.     Plaintiffs' claims are barred because the Shipyard Site was already contaminated as of April 23, 2003 and by this Court's Opinion and Order of July 5, 2011, Defendants may not be held liable for any releases or migration that occurred prior to April 23, 2003.

### **THIRD DEFENSE**

68.     Plaintiffs' claims are barred because by this Court's Opinion and Order of July 5, 2011, ArcelorMittal cannot be held liable for claims relating to releases resulting from operations at the Coke Oven Area that occurred before April, 2003.

## FOURTH DEFENSE

69.     Plaintiffs' claims are barred because they seek to assert successor liability against Defendants for releases, contamination or migration attributable to the operations of BSC, contrary to the express terms of the April 23, 2003 Bankruptcy Sale Order.

## FIFTH DEFENSE

70.     By this Court's Opinion and Order of July 5, 2011, Plaintiffs' RCRA claim is barred to the extent it is based upon either: (1) migration that occurred before the Shipyard Site was removed from the Consent Decree in 2006, or (2) releases that occurred on or prior to April 23, 2003.

## SIXTH DEFENSE

71.     Plaintiffs' RCRA citizen suit claim is barred to the extent that any contamination, migration or conditions for which they seek relief are being addressed under the 1997 Consent Decree.

## SEVENTH DEFENSE

72.     Plaintiffs' RCRA citizen suit claim is barred by the prior diligent prosecution of the U.S. and/or Maryland with respect to the same environmental conditions upon which Plaintiffs' claims are based.

## EIGHTH DEFENSE

73.     Plaintiffs' CERCLA claims are barred because the costs they seek to recover were not incurred consistent with National Contingency Plan.

## NINTH DEFENSE

74.     Plaintiffs' CERCLA claims are barred because the costs they seek to recover were not necessary costs of response.

## TENTH DEFENSE

75.    Plaintiffs' CERCLA claims are barred because the costs they seek to recover were regulatory compliance costs rather than response costs.

## ELEVENTH DEFENSE

76.    Plaintiffs' CERCLA claims are barred because the costs they seek to recover were incurred solely due to Plaintiffs' intentional actual or threatened discharge of pollutants to surface waters in violation of the Clean Water Act.

## TWELFTH DEFENSE

77.    Plaintiffs' CERCLA claims are barred because they caused and/or exacerbated the contamination or migration of contaminants on, in or under the Shipyard Site through the pumping of ground water at the Graving Dock.

## THIRTEENTH DEFENSE

78.    Plaintiffs' CERCLA claims are barred because they are primarily liable as the current "owners or operators" of the "facility" under CERCLA.

## FOURTEENTH DEFENSE

79.    Plaintiffs' claims are barred because they voluntarily assumed legal responsibility to address all contamination underlying the Shipyard Site.

## FIFTEENTH DEFENSE

80.    Plaintiffs waived, released and/or are estopped from asserting any claims against Defendants for contamination on the Shipyard Site when Plaintiffs requested and obtained the U.S.'s and Maryland's agreement to remove the Shipyard Site from the scope of the Consent Decree.

## SIXTEENTH DEFENSE

81.    Plaintiffs' claims are barred by the doctrine of unclean hands.

## SEVENTEENTH DEFENSE

82.    The liability for Plaintiffs' CERCLA claims, if any, is divisible and must be apportioned among all liable parties, including Plaintiffs.  Therefore, ArcelorMittal cannot be held jointly and severally liable for Plaintiffs' claims under CERCLA.

## EIGHTEENTH DEFENSE

83.    Most if not all of the liability for Plaintiffs' CERCLA claims should be allocated to them under the equitable factors referenced in 42 U.S.C. § 9613(f).

## NINETEENTH DEFENSE

84.    The release or threat of release upon which Plaintiffs' claims are based and damages resulting therefrom were caused solely by (1) acts of God; (2) acts of war; (3) acts or omissions of third parties other than employees or agents of ArcelorMittal that did not occur in connection with a contractual relationship with ArcelorMittal, and ArcelorMittal exercised due care in light of all relevant circumstances and took precautions against the foreseeable acts or omissions of such third parties and the foreseeable consequences therefrom; or (4) any combination of the foregoing.

## TWENTIETH DEFENSE

85.    None of the costs, contamination, conditions or migration alleged in the Complaint were actually and proximately caused by ArcelorMittal.

## TWENTY-FIRST DEFENSE

86.    Plaintiffs are barred from recovery under the doctrine of *caveat emptor*.

**TWENTY-SECOND DEFENSE**

87.    Some or all of Plaintiffs' claims are barred by the applicable statutes of limitation or repose.

**TWENTY-THIRD DEFENSE**

88.    Some or all of Plaintiffs' claims for relief are barred by the equitable doctrines of laches, ratification, and/or failure to mitigate their alleged damages.

**TWENTY-FOURTH DEFENSE**

89.    Plaintiffs have failed to join as parties persons necessary for a just adjudication of the case.

**TWENTY-FIFTH DEFENSE**

90.    Plaintiffs' own negligence, nonfeasance or misfeasance caused or contributed to their alleged damages, and therefore Plaintiffs are barred from recovering some or all of the damages they seek from ArcelorMittal.

**TWENTY-SIXTH DEFENSE**

91.    Plaintiffs are barred from any recovery against ArcelorMittal because the harm, if any, was the result of intervening causes.

**TWENTY-SEVENTH DEFENSE**

92.    Plaintiffs have failed to perform the necessary conditions precedent to commencement of this action against ArcelorMittal.

**TWENTY-EIGHTH DEFENSE**

93.    ArcelorMittal is not liable for any costs of conducting any voluntary action at the Shipyard Site because it neither caused nor contributed in any material respect to a release of hazardous substances on, in, or under the property; nor did it expressly undertake contractual

liability for conducting any such voluntary action.

## TWENTY-NINTH DEFENSE

94.     Plaintiffs' claims are barred by res judicata and/or collateral estoppel.

## THIRTIETH DEFENSE

95.     Plaintiffs are not entitled to a jury trial on any of their remaining claims.

## RESERVATION OF RIGHTS

96.     ArcelorMittal reserves the right to assert any and all additional defenses, counterclaims or claims against Plaintiffs or any other person or entity which may become known or available during discovery or otherwise prior to the end of trial.

## PRAYER FOR RELIEF

WHEREFORE, ArcelorMittal, having fully answered the Complaint, hereby requests:

A.      that all remaining claims asserted against it in the Complaint be dismissed with prejudice;

B.      that ArcelorMittal recover from Plaintiffs its attorney fees, costs, expert fees and other litigation expenses incurred in its defense; and

C.      that this Court grant such other relief in favor of ArcelorMittal as it may deem necessary and just.

## DEFENDANT ARCELORMITTAL USA LLC'S COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 13 and 8(d), which allows alternative and hypothetical pleading, and without admitting any matters not specifically admitted in its Answer to the Complaint, Defendant ArcelorMittal USA LLC ("ArcelorMittal") states as follows for its Counterclaims against Plaintiffs SPS Limited Partnership, LLLP and SPS 35, LLC (collectively "Plaintiffs"):

## PARTIES, JURISDICTION AND VENUE

1.      These Counterclaims by ArcelorMittal seek monetary damages against Plaintiffs for contribution under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9601 *et seq*., and for common law indemnity and contribution, as well as declaratory relief, with respect to any and all liability that might be incurred by ArcelorMittal in connection with any contamination or migration of contaminants at, on or under the Shipyard Site.

2.      ArcelorMittal hereby incorporates by reference all of its allegations, averments, statements, admissions and denials set forth in its Answer to the Complaint above.

3.      ArcelorMittal is a Delaware limited liability company with its principal place of business at One South Dearborn Street, 19th Floor, Chicago, Illinois, 60603.

4.      Plaintiff SPS Limited Partnership, LLLP ("SPS LLLP") is a Maryland limited liability limited partnership with its principal place of business located at 600 Shipyard Road, Baltimore, Maryland in Baltimore County 21219.

5.      Plaintiff SPS 35, LLC ("SPS 35") is a Maryland limited liability company with its principal place of business located at 600 Shipyard Road, Baltimore, Maryland in Baltimore County 21219.

6.      If this Court has subject matter jurisdiction over Plaintiffs' claims against ArcelorMittal, then it has jurisdiction over ArcelorMittal's counterclaims under federal law. This Court has supplemental jurisdiction over ArcelorMittal's state law counterclaims based upon 28 U.S.C. § 1367 because they arise out of the same case or controversy.

7.      If venue is proper in this judicial district with respect to the remaining claims in Plaintiffs' Complaint, then venue is proper with respect to these Counterclaims under 28 U.S.C. §1391.

## GENERAL ALLEGATIONS

8.      These Counterclaims relate to an approximately 226-acre parcel of real property located at 600 Shipyard Road, Sparrows Point, Baltimore County, Maryland.  This property is referred to in Plaintiffs' Complaint and herein as "the Shipyard Site."  Shipyard operations, including the repair, modification, dismantling and construction of ships, have taken place on the Shipyard Site since approximately 1880.

9.      The Shipyard Site was originally part of an adjacent steel manufacturing facility, which is referred to in the Complaint and herein as the "Steel Mill Site."  The Steel Mill Site was operated by Bethlehem Steel Company ("BSC") from 1916 until April 2003.

10.     During the period of BSC's ownership, coke oven batteries were operated at the Steel Mill Site.  However, these coke ovens ceased operations by December 1991 and were subsequently dismantled.  No one ever operated these coke ovens after BSC.

11.     In February 1997, the United States and the State of Maryland filed separate civil complaints against BSC asserting various environmental claims relating to the Steel Mill Site, which at that time included the Shipyard Site.  *United States v. Bethlehem Steel Corp.*, Case No. 1:97-cv-559-JFM (D. Md.); *Maryland v. Bethlehem Steel Corp.*, 1:97-cv-558-JFM (D. Md).

These cases were consolidated and resolved by a detailed Consent Decree, which was entered by this Court on October 8, 1997. This 1997 Consent Decree remains in effect today.

12. The Consent Decree required BSC to investigate, *inter alia*, contamination arising out of the historic operation of the Steel Mill Site's coke oven area.

13. By Deed dated September 30, 1997, BSC later sold the Shipyard Site to Baltimore Marine Industries, Inc. ("BMI"). The Deed expressly referenced the 1997 Consent Decree and its possible effect on the Shipyard Site:

> The Grantee recognizes that the implementation of corrective action or response actions under a consent decree lodged on February 25, 1997 in the cases of United States v. Bethlehem Steel Corporation, Defendant, Civil Action No. JFM-97-559 and Maryland v. Bethlehem Steel Corporation, Civil Action No. JFM-97-558, in the United States District Court for the District of Maryland, (the "Consent Decree") at the above-described tract of land may interfere with the Grantee's use of the above-described tract of land, and may require closure of its operations or a part thereof.

14. On October 15, 2001, BSC filed voluntary cases for reorganization under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. *In re Bethlehem Steel Corp., et al.*, Ch. 11 Case Nos. 01-15288 through -15302, 01-15308 through -1531. On April 23, 2003, the Bankruptcy Court entered an "Order Authorizing (I) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances, (II) Assumption and Assignment of Certain Executory Contracts, and (III) Assumption of Certain Liabilities" (hereinafter "Sale Order") authorizing the sale of the Steel Mill Site (minus the Shipyard which had been sold to BMI years before) to affiliates and assignees of International Steel Group Inc. pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code "free and clear of all Interests of any kind or nature whatsoever," except for certain specified Assumed Liabilities.

15.    The Sale Order approved all of the terms and conditions of an Asset Purchase Agreement ("APA") dated March 12, 2003, as amended, which defined the Assumed Liabilities assumed by the buyer of the Steel Mill Site.  Section 1.4 of the APA expressly provided that the "Excluded Liabilities" which were retained by the BSC and not assumed by the buyer included, without limitation:

> all liabilities and obligations of Sellers for (i) any environmental, health or safety matter (including, without limitation, any liability or obligation arising under any Environmental Law) (A) relating to any property or assets other than the Acquired Assets; [and/or] (B) resulting from the transport, disposal or treatment of any Hazardous Materials by any Seller on or prior to the Closing Date to or at any location other than the Real Property ….

16.    As a result of the bankruptcy sale, the Steel Mill Site (not including the Shipyard Site) was transferred directly from BSC to a Delaware corporation known as "ISG Sparrows Point Inc." by Special Warranty Deed dated May 7, 2003.  ISG Sparrows Point Inc. was converted to a limited liability company and renamed "ISG Sparrows Point LLC" on December 30, 2003.  On or about May 13, 2008, Severstal Sparrows Point Holding LLC was merged into ISG Sparrows Point LLC, and the surviving entity was renamed "Severstal Sparrows Point, LLC."  Effective April 14, 2011, this entity was re-named "RG Sparrows Point, LLC."  Consequently, this entity (the other Defendant named in Plaintiffs' Complaint) has been the *sole* owner and operator of the Steel Mill Site since 2003.

17.    By Deed dated March 4, 2004, BMI in turn transferred ownership of the Shipyard Site to Plaintiff SPS LLLP.  That Deed expressly acknowledged that either U.S. EPA or MDE could "require[] remedial work to be done on the above-referenced tract of land" (i.e., the Shipyard Site) under the 1997 Consent Decree."

18.    SPS 35 acquired a minority ownership interest in the Shipyard Site on or about June 8, 2006.

19.    At no time has ArcelorMittal ever owned or operated either the Steel Mill Site or the Shipyard Site.

20.    The Shipyard Site includes a 13.4-acre "Graving Dock," which was constructed in 1969.  According to the Complaint, the Graving Dock is flooded in order to bring ships in and then is pumped dry to facilitate SPS LLLP's work on the ships.  On information and belief, since it became the owner of the Shipyard Site in 2004, SPS LLLP has discharged the water pumped from the Graving Dock directly to the Patapsco River.

21.    Shortly before SPS LLLP purchased the Shipyard Site in 2004, it submitted an application to the Maryland Department of Environment (MDE) to address environmental contamination at the Shipyard Site under the Maryland Voluntary Cleanup Program ("VCP"), Md. Code Ann., Env. §7-501.

22.    SPS LLLP's 2004 VCP application enclosed a Phase I Environmental Assessment report prepared by ENVIRON International Corporation dated October 2003.  This Phase I report noted that the Graving Dock pumps used "for the removal of seepage water from beneath the Graving Dock" was believed to be drawing ground water containing benzene from the historic operations of the Steel Mill Site's Coke Oven Area onto the Shipyard Site property.  The report stated it was believed "that the direction of ground water flow in both the shallow and intermediate zones in the vicinity of the Coke Oven Area may be influenced by the seepage sumps at the Graving Dock.  If true, the seepage pumps could be acting to pull the contaminant plume toward the [Shipyard] Site."  p. II-6.

23.    On information and belief, Plaintiffs' intentional pumping and discharge of ground water at the Graving Dock has caused and/or exacerbated the migration of contaminants

onto the Shipyard Site and resulted in the incurrence of costs which Plaintiffs now seek to recover against Defendants under the remaining claims in their Complaint.

24.     In 2006, Plaintiffs requested that the Shipyard Site be removed from the scope of the 1997 Consent Decree.  On or about June 15, 2006, the U.S. and Maryland agreed to remove the Shipyard on the condition that the Plaintiffs address the environmental conditions at the Shipyard Site pursuant to the Maryland VCP.  Plaintiffs accepted and agreed to this condition, and the Shipyard Site was removed from the scope of the 1997 Consent Decree at that time. Therefore, Plaintiffs have voluntarily assumed all legal obligations to address the contamination at, on or under the Shipyard Site.

25.     Accordingly, on September 22, 2006, SPS LLLP submitted to MDE a second VCP Application.  In this second application, which was certified as accurate "under penalty of law" by its own General Partner, SPS LLLP admitted that it is a "Responsible Person" under Md. Code Ann., Env. §7-201 with respect to environmental conditions at the Shipyard Site.

26.     According to the Complaint, on or about February 1, 2010, MDE issued a National Pollutant Discharge Elimination System (NPDES) permit to SPS LLLP which required SPS LLLP to install and operate a treatment system to treat ground water pumped from the Graving Dock prior to discharging such water to the Patapsco River.

27.     All costs attributable to this treatment system are compliance costs arising out of SPS LLLP's election to conduct a regulated activity—namely, the discharging of ground water pumped from the Graving Dock through a point source into the Patapsco River.

28.     In their May 10, 2010 Notice of Intent to Sue to Defendants, Plaintiffs alleged that "[o]peration of the coke ovens and facilities associated with the coke ovens (including, without limitation, the structure known as the "litol/benzene plant") at the Steel Mill Site has resulted in

releases of hazardous substances (including, without limitation, benzene, naphthalene, toluene, ethylbenzene, xylenes, other organic substances, and arsenic, lead and other metals) to the soil and groundwater at the Steel Mill Site, which hazardous substances have migrated, and are migrating, to the Shipyard Site."

29.     Plaintiffs' Complaint alleges that "the area of the coke oven operations is the 'source area' of contamination".  Cmplt. (Doc. #1) ¶26.

30.     On information and belief, Plaintiffs have failed to fully or properly address the contamination at, on or underlying the Shipyard Site as they committed to do when they requested that the Shipyard Site be removed from the Consent Decree in 2006.

31.     By its Opinion and Order of July 5, 2011, this Court has ruled that:

a.      the April 23, 2003 Bankruptcy Court Sale Order relieves ArcelorMittal of any liability for the release or migration of contaminants occurring before April 23, 2003;

b.      because the coke ovens ceased operations in December 1991, ArcelorMittal could not have contributed to the coke oven waste on which Plaintiffs base their "imminent and substantial endangerment" claim under RCRA; and

c.      Plaintiffs may not seek relief against ArcelorMittal under RCRA except for any migration of hazardous substances which Plaintiffs can show occurred after June 2006 due to releases that occurred after April 23, 2003.

## COUNT I: CERCLA CONTRIBUTION

32.    ArcelorMittal hereby incorporates by reference all of the allegations contained in Paragraphs 1 through 31 of these Counterclaims as if fully restated herein.

33.    Section 113(f) of CERCLA, 42 U.S.C. §9613(f), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA during or following any civil action under Section 107(a).

34.    Plaintiffs' Complaint herein constitutes an action under Section 107(a) of CERCLA.

35.    Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a)(1), provides that the current "owner and operator" of a "facility" from which there is a release or a threatened release of a hazardous substance which causes the incurrence of response costs shall be liable for necessary costs of response incurred by any other person consistent with the national contingency plan.

36.    Section 101(9) of CERCLA, 42 U.S.C. §9601(9), defines "facility" to include "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located."

37.    Plaintiffs' Complaint alleges that the Shipyard Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. §9601(9) from which there has been a "release" or a threatened "release," as that term is defined in Section 101(22) of CERCLA, 42 U.S.C. §9601(22).

38.    Plaintiffs each meet the definition of "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. §9601(21).

39.    SPS LLLP and SPS 35 are each an "owner or operator" of the Shipyard Site as that term is defined in Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A).

23

40.     Plaintiffs' Complaint alleges that necessary costs of response have been incurred with respect to releases at the Shipyard Site consistent with the National Contingency Plan.

41.     Section 113(f)(1) of CERCLA, 42 U.S.C. §9613(f)(1), provides that in resolving contribution claims, the court may allocate response costs "using such equitable factors as the court determines are appropriate."

42.     ArcelorMittal denies that it may be held liable for Plaintiffs' remaining claims in the Complaint.  In the event that ArcelorMittal incurs any liability with respect to any of the matters set forth in the Complaint in excess of its equitable share, then such excess liability should be allocated to Plaintiffs under the appropriate equitable factors referenced in Section 113(f)(1) of CERCLA and other grounds.

43.     Consequently, if ArcelorMittal is held liable in this proceeding to any person for any claims, costs or damages in excess of its equitable share, then Plaintiffs are jointly and severally liable in contribution to ArcelorMittal for all such claims, costs or damages in excess of its equitable share pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. §9613(f)(1) and other grounds.

## COUNT II: COMMON LAW INDEMNITY

44.     The allegations contained in Paragraphs 1 through 43 of these Counterclaims are incorporated by reference as if fully restated herein.

45.     ArcelorMittal denies that it may be held liable for Plaintiffs' remaining claims in the Complaint.  In the event that ArcelorMittal incurs any liability with respect to any of the matters set forth in the Complaint, then such liability is secondary to that of Plaintiffs, who are primarily responsible and liable for all such matters.

46.    Consequently, if ArcelorMittal is held liable in this proceeding for any claims, costs or damages, then Plaintiffs are in turn jointly and severally liable to ArcelorMittal for all such claims, costs or damages pursuant to common law and established principles of justice and equity.

## COUNT III: COMMON LAW CONTRIBUTION

47.    The allegations contained in Paragraphs 1 through 46 of these Counterclaims are incorporated by reference as if fully restated herein.

48.    ArcelorMittal denies that it may be held liable for Plaintiffs' remaining claims in the Complaint.  In the event that ArcelorMittal incurs any liability with respect to any of the matters set forth in the Complaint, then such liability is a common liability shared with the Plaintiffs.

49.     Consequently, if ArcelorMittal is held liable in this proceeding to any person for any claims, costs or damages in excess of ArcelorMittal's equitable share, then Plaintiffs are jointly and severally liable in contribution to ArcelorMittal for all such claims, costs or damages in excess of its equitable share pursuant to common law and established principles of justice and equity.

## COUNT IV:  DECLARATORY JUDGMENT

50.    The allegations contained in Paragraphs 1 through 49 of these Counterclaims are incorporated by reference as if fully restated herein.

51.    This Court is authorized to declare the rights and obligations of the Parties and grant further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202.

52.    Section 113(g)(2) of CERCLA, 42 U.S.C. §9613(f)(2), provides that in any action for recovery of response costs, the court shall enter a declaratory judgment on liability for

response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

53.    ArcelorMittal is entitled to a declaratory judgment that:

a.    Plaintiffs are primarily liable for any response costs or other damages arising out of any contamination or migration of contaminants at, on or under the Shipyard Site for which they voluntarily assumed legal responsibility;

b.    Plaintiffs have failed to fully and properly address the contamination at, on or underlying the Shipyard Site as they committed to do when they requested that the Shipyard Site be removed from the Consent Decree in 2006;

c.    Plaintiffs' intentional pumping and discharge of ground water at the Graving Dock has caused and/or exacerbated the migration of contaminants onto the Shipyard Site and resulted in the incurrence of the costs which Plaintiffs seek to recover against Defendants under the remaining claims in their Complaint;

d.    Plaintiffs are each a "Responsible Person" under Md. Code Ann., Env. §7-201 with respect to the environmental conditions at the Shipyard Site; and

e.    Plaintiffs are liable for their equitable shares of any response costs or other damages incurred or to be incurred as a result of any contamination or migration of contaminants at, on or under the Shipyard Site under all appropriate equitable factors.

## PRAYER FOR RELIEF

WHEREFORE, ArcelorMittal respectfully requests that this Court:

(1)     enter judgment in ArcelorMittal's favor against Plaintiffs:

     (a)     for any and all claims, costs or damages for which ArcelorMittal is held liable in this proceeding to any person, or alternatively,

     (b)     for any and all claims, costs or damages for which ArcelorMittal is held liable in this proceeding to any person in excess of ArcelorMittal's equitable share;

(2)     enter declaratory judgment that:

     a.     Plaintiffs are primarily liable for any response costs or other damages arising out of any contamination or migration of contaminants at, on or under the Shipyard Site for which they voluntarily assumed legal responsibility;

     b.     Plaintiffs have failed to fully and properly address the contamination at, on or underlying the Shipyard Site as they committed to do when they requested that the Shipyard Site be removed from the Consent Decree in 2006;

     c.     Plaintiffs' intentional pumping and discharge of ground water at the Graving Dock has caused and/or exacerbated the migration of contaminants onto the Shipyard Site and resulted in the incurrence of the costs which Plaintiffs seek to recover against Defendants under the remaining claims in their Complaint;

    d.      Plaintiffs are each a "Responsible Person" under Md. Code Ann., Env. §7-201 with respect to the environmental conditions at the Shipyard Site; and

    e.      Plaintiffs are liable for their equitable shares of any response costs or other damages incurred or to be incurred as a result of any contamination or migration of contaminants at, on or under the Shipyard Site under all appropriate equitable factors;

(3)    award ArcelorMittal all attorney fees, costs, expert fees and other litigation expenses incurred in its defense; and

(4)    grant such other legal and equitable relief in ArcelorMittal's favor as this Court may deem just and proper.

Dated: August 2, 2011                  Respectfully submitted,

/s/ Vincent Atriano
Vincent Atriano (*admitted pro hac vice*)
Andrew O. Etter (*admitted pro hac vice*)
Squire, Sanders & Dempsey (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Phone: (614) 365-2700
Fax: (614) 365-2499
Email: vincent.atriano@ssd.com
andrew.etter@ssd.com

Dale E. Papajcik (*admitted pro hac vice*)
William V. Shaklee (*admitted pro hac vice*)
Squire, Sanders & Dempsey (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Phone: (216) 479-8500
Fax: (216) 479-8780
Email: dale.papajcik@ssd.com
william.shaklee@ssd.com

Amy L. Brown (Bar #15455)
Squire, Sanders & Dempsey (US) LLP
1201 Pennsylvania Avenue, N.W.
Suite 500
Washington, D.C. 20004
Phone: (202) 626-6600
Fax: (202) 626-6780
Email: amy.brown@ssd.com

*Attorneys for ArcelorMittal USA
LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 2nd day of August 2011, a true and complete copy of the *Answer and Counterclaims of Defendant ArcelorMittal USA LLC* was served upon all counsel of record through the Court's electronic filing system.


   /s/ Vincent Atriano
Vincent Atriano (*admitted pro hac vice*)